IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL KALLAS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO: _____ |
| | ) | |
| **COFFEE COUNTY;** | ) | |
| A through H, being those individuals, | ) | **JURY TRIAL DEMANDED** |
| entities or Insurance companies | ) | |
| whose names and/or identities are | ) | |
| presently unknown but who are | ) | |
| liable for damages owed | ) | |
| to Plaintiff, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

**COMES NOW**, your Plaintiff in the above-styled action, Michael Kallas, by and through his undersigned attorney, Charles H. Ellzey, and files this Complaint for Violation of the Americans with Disabilities Act, Civil Rights, Denial of Due Process under both the United States and Alabama Constitution; and as a basis for the relief hereinafter prayed for states as follows:

## PARTIES

1. Plaintiff, Michael Kallas, is an Alabama resident, her principal place of residence is in Coffee County, Alabama. Plaintiff's rights under both Federal and State law were violated by the Defendants in above styled case.

2. Defendant, Coffee County, Alabama (referred to herein as "County"), is and at all times relevant was a County entity, and its principal place of business is 1065 E. McKinnon Street, New Brockton, AL 36351.

3. Defendants, A through H, are fictitiously named defendants whose names are presently unknown to the Plaintiff and who are liable for damages owed to Plaintiff. The Plaintiff will add those defendants by amendment once their identities are known.

## JURISDICTION AND VENUE

4. Jurisdiction and Venue are proper in the Southern Division of the Middle District Court of Alabama for the following reasons:

5. The District Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiff herein is requesting relief due to the Defendants violation of federal law, as well as their violation of State law.

6. The District Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). All of Plaintiff's claims herein stem from the same case or controversy.

7. Venue is proper under 28 U.S.C. § 1391(b)(1) as the Defendant Coffee County, Alabama is located in Coffee County, Alabama with a principal address of 1065 E. McKinnon Street, New Brockton, AL 36351.

8. Venue is also proper given "a substantial part of the events or omissions giving rise to the claim occurred" within Coffee County, Alabama during Plaintiff's employment with the Coffee County Landfill and her subsequent termination/forced resignation therefrom. 28 U.S.C. § 1391(b)(2).

**FACTS**

9. Plaintiff was hired as a garbage truck driver at the Coffee County Landfill on or about October 1, 2015.

10. During his time of employment, Plaintiff regularly worked with equipment which was not properly maintained, including but not limited to garbage trucks without properly working brakes, often entirely missing safety steps and other safety measures. The safety measures typically found on most vehicles of today were often damaged or completely nonfunctional on the trucks provided to Plaintiff, with the mirrors and cameras on the truck often useless due to lack of maintenance.

11. One such instance, the Plaintiff was given a truck with a broken seat, which he requested to be repaired. Not only did the Defendants refuse to repair the truck's driver's seat for several weeks, causing physical injury to the Plaintiff, but they also ridiculed him for the request, disparagingly asserting that the Plaintiff's weight being the reason it broke through jokes and humiliating comments.

12. Only after another driver drove the truck with the faulty seat, and confirmed the Plaintiff's comments about the seat causing injury, did the Defendant(s) repair it. This became a common theme for the Plaintiff – his requests for repairs would be laughed off, and nothing he requested to be repaired would be fixed until a different employee made the same request.

13. Defendant(s) failed to properly maintain the Coffee County Landfill by allowing ruts to develop where the Plaintiff and other drivers had to drive their trucks daily, causing physical injury to the Plaintiff by having to traverse rough terrain everyday with a truck ill equipped to do so. Physical injury to the Plaintiff also stemmed from his having to assist in getting the truck un-stuck from any predicament it might come into due to poor road

quality. Plaintiff was also forced to physically exert himself to get the truck un-stuck from any location not within the Coffee County Landfill itself.

14. Plaintiff suffers from various conditions qualifying as a disability under the Americans with Disabilities Act. *See* 42 U.S.C. § 12102.

15. On or about May 10, 2023, Plaintiff requested time off to visit a doctor due to debilitating pain in his back. This request was denied by his supervisor, and the Plaintiff was not able to attend the appointment as a result.

16. On or about May 15, 2023, still having yet to see a doctor as a result of his denied leave requests, the Plaintiff suffered from a fall during the course and scope of his employment with the Coffee County Landfill. The fall left Mr. Kallas with a more permanent and severe injury, causing him to become disabled as defined under the Americans with Disabilities Act's 42 U.S.C. §12102.

17. Despite the repeated requests for leave to visit a doctor, and suffering the fall and sustaining painful and permanent damage to his body, Mr. Kallas was again required to work by the Coffee County Landfill on the following day, May 16, 2023. The Plaintiff suffered yet another fall while acting within the course and scope of his employment on May 16, 2023.

18. On May 17, 2023 when the Plaintiff was finally able to visit a doctor the physician informed Mr. Kallas he would need immediate, emergency surgery to avoid total paralysis.

19. In 2024, once cleared by his doctor to return to work, but only at a light duty position, the Plaintiff requested a position with his employer that would grant him reasonable accommodations in light of his disability.

20. Plaintiff's light duty request was denied by the Defendant(s), who asserted they had no such position available despite the Plaintiff having clear knowledge that at least one light duty/desk position was open with the Coffee County landfill during that period of time.

## CLAIMS FOR RELIEF

### COUNT I: 42 U.S.C. 12112 – DISCRIMINATION ON THE BASIS OF DISABILITY

21. Plaintiff adopts into this count the averments contained in the preceding paragraphs.

22. Defendant(s) herein acted in violation of 42 U.S.C. § 12112(a) by "discriminat[ing] against a qualified individual on the basis of disability in regard to … advancement, or discharge of [Plaintiff], [Plaintiff's] compensation, job training, and other terms and conditions, and privileges of employment.

23. Defendant(s) have denied employment opportunities and/or benefits to Plaintiff based on the need for the Landfill to make reasonable accommodations to the impairments of Mr.

Kallas, which are a direct and proximate result of the Defendant(s)' refusal to let the Plaintiff seek medical attention when he originally requested to do so.

24. Even while the Plaintiff was employed by and actively working for the Defendant(s), they discriminated against him by refusing to allow him to seek proper medical attention in a timely manner, despite his requests to do so. Defendant(s) refused to acknowledge the severity of Plaintiff's medical needs until he was forced into emergency surgery by his doctor. Thus, Defendant(s) are further liable for this violation of federal law, as the disability suffered by the Plaintiff is a direct and proximate result of the Defendant(s) discriminatory conduct towards the Plaintiff.

25. The Defendant(s) even went so far in their discriminatory conduct, as to force the Plaintiff to have other employees report the issues he had requested repaired, otherwise the Defendant(s) would never fix the items requested by Plaintiff. Essentially, the Defendant(s) treated the Plaintiff as a second class citizen at his own place of employment, despite years of faithful service without incident. The only prior incident's between Plaintiff and Defendant(s) were previous instances where Plaintiff claimed workers' compensation.

26. Despite settlement of the previous injury, the Defendant(s) clearly continued to hold the previous incident and worker's compensation claim against the Plaintiff, denying him rights given freely to other employees such as the ability to have requested items repaired. Defendant's discriminatory conduct also included ridicule and humiliation in attempts to get the Plaintiff to drop the current action.

27. In addition to the refused requests to seek medical care, the Plaintiff was also subjected t consistent, derogatory and disparaging language from his supervisor at the Coffee County Landfill. The supervisor repeatedly asserted that the Plaintiff's injuries were not serious and repeatedly refused the Plaintiff's requests for time off to seek medical attention.

28. Defendant(s) discriminated against the Plaintiff on the basis of disability when they forcibly terminated the Plaintiff so that they could hire an individual without disabilities, and refused to allow the Plaintiff to serve in a role which would not require strenuous activity, despite having at least one such position open at the time of Plaintiff's request for light duty.

**COUNT II: FAILURE TO PROVIDE REASONABLE ACCOMODATIONS IN ACCORDANCE WITH 42 U.S.C. § 12112(b)(5)(A)**

29. Plaintiff adopts into this count the averments contained in the preceding paragraphs.

30. Defendant(s) herein acted in violation of 42 U.S.C. § 12112(b)(5)(A) by refusing, with no adequate justification, to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee."

31. Defendant(s) were well aware of the Plaintiff's disability, having first hand knowledge of his requests to seek medical attention, as well as his injuries sustained in May of 2023.

However, despite this first-hand knowledge the Defendant(s) refused to acknowledge his limitations or give him any reasonable accommodations, the provision of which would cause the Defendant(s) no undue hardship.

32. Defendant(s) discriminated against the Plaintiff on the basis of disability when they forcibly terminated the Plaintiff so that they could hire an individual which would not require the Landfill to provide any accommodations.

## COUNT III: WORKERS COMPENSATION

33. Plaintiff adopts into this count the averments contained in the preceding paragraphs.

34. Alabama law permits civil actions to recover based on workers' compensation theories. *See* Ala. Code §§ 25-5-30-36.

35. Ala. Code § 25-5-31 provides:

    When personal injury or death is caused to an employee by an accident arising out of and in the course of his employment, of which injury the actual or lawfully imputed negligence of the employer is the natural and proximate cause, he … shall receive compensation by way of damages therefor from the employer.

36. It is undisputed that the injury Mr. Kallas suffered arose out of the course and scope of his employment with the Coffee County Landfill.

37. As such, Plaintiff is entitled to compensation for the injuries he sustained, including payment of the medical fees and expenses he has since, and will continue to incur as a result of Defendant(s)' conduct.

## COUNT IV: RETALIATION AGAINST EMPLOYEE FOR INSTITUTING A WORKERS' COMPENSATION CLAIM/ACTION IN VIOLATION OF ALA CODE § 25-5-11.1

38. Plaintiff adopts into this count the averments contained in the preceding paragraphs.

39. Ala. Code § 25-5-11.1 states: "[n]o employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter or solely because the employee has filed a written notice of violation of a safety rule."

40. The Court in *Dillard's* reviewed Alabama retaliatory-discharge law, finding that "the formal initiation of an action for workers 'compensation benefits is not required before an employee whose employment is allegedly terminated in violation of § 25–5–11.1 may bring a retaliatory-discharge action." *Dillard's Inc. v. Gallups*, 58 So.3d 196, 204 (Ala. Civ. App. 2010).

41. In Alabama, a cause of action for retaliation is not solely limited to cases of retaliatory discharge. *Dillard's*, 58 So.3d at 204-05. "Although in Gallups's case the alleged retaliation took the form of a termination of his employment, thus giving rise to an action under § 25–5–11.1, not every retaliation for seeking benefits or for exercising a right will take that form." *Id* at 205.

42. After instituting the negotiations of his workers' compensation settlement, Plaintiff suffered consistent and severe retaliation from Defendant(s) including, but not limited to disparaging language and emotional treatment, denial of employment opportunities and benefits, refusal to approve reasonable accommodations for the Plaintiff, constructive discharge and emotional abuse.

43. Defendant's retaliatory conduct included repeated refusals to grant the Plaintiff leave to visit a medical professional, considerably worsening his disability.

44. Defenant(s) forcing the Plaintiff to resign involuntarily through their refusal to grant Mr. Kallas reasonable accommodations constitutes constructive discharge, which is actionable under Alabama law as well. *See Ex Parte Breitsprecher*, 772 So.2d 1125, 1129 (Ala. 2000).

## COUNT V: FAILURE TO PROVIDE SAFE WORKPLACE
## IN ACCORDANCE WITH ALABAMA CODE § 25-1-1

45. Plaintiff adopts into this count the averments contained in the preceding paragraphs.

46. Under Alabama law:

    > Every employer shall furnish employment which shall be reasonably safe for the employees engaged therein and shall furnish and use safety devices and safeguards and shall adopt and use methods and processes reasonably adequate to render such employment and the places where the employment is performed reasonably safe for his employees and others who are not trespassers, and he shall do everything reasonably necessary to protect the life, health and safety of his employees and others who are not trespassers.

    Ala. Code § 25-1-1(a).

47. The Defendant(s) have repeatedly provided the Plaintiff with vehicles and other equipment missing safety features, or with barely functional safety features such as hardly working brakes.

48. The Defendants, through the Coffee County Landfill have failed to carry out their duty to provide the Plaintiff with safe work environment in accordance with the above provision, leaving them liable to the Plaintiff for damages resulting out of their failure to do so.

## COUNT VI: INTENTIONAL/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

49. Plaintiff adopts into this count the averments contained in the preceding paragraphs.

50. The acts of Defendants noted herein were intentional and/or done with such reckless disregard of the probability of causing the Plaintiff serious emotional injury that they constitute either intentional or negligent infliction of emotional distress due to their extreme, and outrageous nature.

51. In fact, the Defendant(s) even attempted to use the emotional distress they had caused the Plaintiff against him, in attempts to persuade the Plaintiff to settle this action for far less that he is entitled to under State and Federal law.

52. As a direct, legal and proximate result of such actions by Defendant(s), the Plaintiff suffered severe emotional distress which caused the Plaintiff to sustain emotional injuries to his person.

53. Plaintiff is informed and believes, and upon such information and belief alleges, that he will necessarily by reason of his injuries, incur additional like expenses for a indefinite period of time in the future, all to Plaintiff's damage in a sum to be shown according to proof.

## COUNT VII: OUTRAGE

54. Plaintiff adopts into this count the averments contained in the preceding paragraphs.

55. This is a claim against Coffee County, Alabama arising under the laws of the State of Alabama prohibiting the intentional infliction of emotional distress.

56. The acts of Defendants alleged herein were intentional, reckless, extreme, and outrageous. Plaintiff, upon information and belief, alleges the Defendants intended to inflict emotional distress, or they know or should have known that emotional distress was the likely result of their actions. Defendant(s) used this emotional distress as leverage to force Plaintiff into resigning.

57. Not only are the Defendant(s) partially, if not completely responsible for the injuries the Plaintiff sustains, they are also responsible for the Plaintiff's disability by refusing his requests to seek medical treatment repeatedly, and forcing him to work after injuries sustained on the job, leading Plaintiff to suffer from a severe and permanent disability.

58. Defendants have committed the tort of outrage by causing the Plaintiff's injury, then exacerbating the same through their discriminatory and unlawful conduct towards the Plaintiff.

59. The acts of Defendants herein were intentional, reckless, extreme and outrageous and beyond the bounds of normal decency. Plaintiff suffered severe emotional distress due to Defendants actions.

60. We have previously recognized that the tort of outrageous conduct can exist in a workmen's compensation setting." *Farley v. CNA Ins. Co.*, 576 So.2d 158, 159 (Ala. 1991) (internal citations omitted).

61. Alabama first recognized the tort of outrage, or infliction of severe emotional distress in *Road Service Co. v. Inmon*, 394 So.2d 361 (Ala. 1980):

    > [W]illful wrongs, or those made so recklessly as to equate willfulness, authorize recovery in damages for the mental suffering caused thereby, and we now recognize that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. Comment, Restatement [(Second) of Torts, § 46 (1965) ], at 78. By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. Comment (d), Restatement, supra at 72.

    *Continental Cas. Ins. Co. v. McDonald*, 567 So.2d 1208, 1211 (Ala. 1990).

62. Specifically in relation to workers compensation claims, the Alabama Supreme Court has held:

    > This Court further recognizes that the nature of the Alabama Workmen's Compensation Act requires that employees who fall within the protection of these statutes have confidence that their medical bills will be timely paid, and to deter defendants from future conduct such as was evidenced here when paying medical bills owed under our compensation laws [sic]. Indeed, the guarantee of payment of future medicals is a major factor considered by injured employees when settling their workman's compensation claims.

    *Continental*, 567 So.2d at 1222.

63. In *Continental*, the Supreme Court upheld a $750,000.00 jury verdict against the Defendant on the claim of outrage. *Id.*

64. In upholding the verdict, the Supreme Court outlined several factors which constituted sufficient evidence of outrage:

    a. CNA put forth justifications for its delays in payments, but the jury was entitled to disbelieve CNA's evidence because of the pervasive nature of the delays, the lack of any reasonable explanation for most of them, and the evidence that CNA was attempting to 'persuade' McDonald to accept a settlement that would greatly reduce the amount that CNA would have to pay for McDonald's medical expenses.

    b. CNA had no legal right to delay payments for no good reason, and the jury could have found that, on occasions when CNA did assert its legal rights, it did not do so in a permissible way.

    c. "McDonald's need for treatment for his pain was an immediate, day-to-day need..."

    d. There was pervasive evidence here that McDonald's pain was unusually severe and rendered him especially subject to emotional distress over the continuing availability of treatment, and that CNA engaged in repeated conduct that brought the availability of treatment into doubt.

    e. The jury was entitled to believe that CNA engaged in a deliberate effort to cause McDonald to suffer severe emotional distress in order to coerce him into accepting an unreasonably low lump-sum settlement that would drastically reduce CNA's liability for his medical expenses. The evidence supports a finding that CNA systematically withheld payments in order to cause McDonald anguish over the possibility of the cessation of medical treatments for his pain and thereby to cause him to accept a method of payment that would not subject him to CNA's "aggravation," as he called it. A jury could reasonably find from the evidence that such conduct was "beyond all possible bounds of decency, ... atrocious[,] and utterly intolerable in a civilized society." Id at 1221 (quoting Inmon, 394 So.2d 361, 365 (Ala. 1980).

*Continental Cas. Ins. Co. v. McDonald*, 567 So.2d 1208 (Ala. 1990)

65. The Defendant employer committed outrage by way of its discriminatory and disparaging conduct directed towards the Plaintiff. The Defendant(s), by causing and then worsening the Plaintiff's injury and then refusing to pay his workers' compensation claim while simultaneously discriminating against him constitutes outrage.

66. The Defendants were well aware of the time sensitivity of the operation to prevent Mr. Kalls from becoming paralyzed, the emergency nature of which was brought about only by the Defendant(s) tortious conduct.

67. Defendants were well aware of the fact they expected the Plaintiff to often utilize trucks or other equipment which were in a nearly constat state of disrepair. Plaintiff was often chastised for any comments made regarding the safety of himself with respect to the provided equipment.

68. As stated above, the Supreme Court in *Continental Ca. Ins. Co. v. McDonald*, upheld a jury verdict for the Plaintiff on one such outrage claim against a Defendant in the amount of $750,000.00. 567 So.2d 1208 (Ala. 1990).

**WHEREFORE**, the premises considered, your Plaintiff respectfully demands a judgment against the Defendants for punitive and compensatory damages in the amount of Five Million Dollars ($5,000,000.00) pursuant to 42 U.S.C. § 12112, and other pendant federal and state law,

together with interest, costs and attorneys' fees, and such other or further relief to which the jury may determine the Plaintiff may be entitled.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY!**

CERTIFICATION

_____
MICHAEL KALLAS

STATE OF ALABAMA
COUNTY OF _COVINGTON_

I, _SHELIA A. CAYLOR_ a Notary Public in and for said County, in said State, do hereby certify that MICHAEL KALLAS, whose name is signed to the foregoing instrument, and who is known by me, acknowledged before me on this day that, being informed of the contents of said instrument, he/she executed the same voluntarily on the day the same bears date.

Witness my signature and official seal on this the _30TH_ day of _OCTOBER_, 2024.

_____
NOTARY PUBLIC

My Commission Expires: _DEC. 01, 2024_           (SEAL)

**RESPECTFULLY** submitted this the 30th day of October, 2024.

*Charles H. Ellzey*
Charles H. Ellzey (ELL-077)
The Law Offices of Charles H. Ellzey, PLLC
617 Davis St. Unit B
PO Box 764
Elba, AL 36323
334-403-5691
334-635-0407 (fax)
chas@chellzeylaw.com

**PLEASE SERVE COMPLAINT WITH SUMMONS:**

Coffee County, Alabama
c/o Coffee County Commission
1065 E. McKinnon Street
New Brockton, AL 36351

*Charles H. Ellzey*
OF COUNSEL